Oral arguments not to exceed 15 minutes per side. Mr. John Patrick Grant for the appellant. May it please the court, I would like to reserve three minutes for rebuttal. Courts employ a strong presumption. In cases where claims of ineffective assistance of counsel are raised. That counsel engaged in a wide range of professional conduct. Here Dr. Arny had to prove that his trial counsel not only engaged in deficient conduct. Which means that it was not only below average, but it fell below a reasonable standard, an objective standard of reasonableness. But also prejudice. And in this context Dr. Arny had to prove that there was a reasonable probability. But for the alleged errors that this jury would have found his client not guilty. Now the district court found that there was deficient performance based on several different events. One was an email that seven months before trial there were two attorneys who represented Dr. Arny at trial. Stephen Owens and Kent Varney. And there was proof at that evidentiary hearing. That Kent Varney seven months before the trial had sent an email to Dr. Arny. Telling him that a witness that Dr. Arny wanted to testify, Dr. Saxman, who had previously worked at the clinic. That she had, her office had been searched by the government and that she either was working out a deal or was about to be charged. The district court characterized that that was not true. And there's no question about that. But the district court went too far in characterizing that as a deliberate falsehood. Because the only evidence relating to that event was that piece of paper. The defendants, the defendant did not call that lawyer as a witness. And we know that that email did not confuse Dr. Arny because several months later he was still insisting that she be called as a witness. And in fact his lawyers did attempt to subpoena her. That the subpoena server took the subpoena to where she was then practicing medicine in Lexington. And they were told correctly that she was out of the country. Now the lawyer testified that after that happened, that that was in June of 2014. At that point the trial was set in July. It later got changed to September. And the evidence was that she testified, Dr. Saxman testified at the evidence sheet hearing that she in fact had returned. And she would have been available to testify. But there was no information in September. And the counsel did not subpoena her in connection with the trial in September. That's correct. That's correct. But there was no information that there was, pardon me, that's correct. Now the allegation that they were ineffective in failing to interview, perhaps it would have been best practice to interview her. But of course that's not the standard. The lawyer explained, and the evidence is, is that through discovery the lawyers knew what her testimony was going to be. Through discovery of whom? Through discovery in the case. That before trial the lawyers knew what Dr. Saxman would testify to. What was the basis for that belief? What was in the discovery that would lead a reasonable lawyer to draw that conclusion? Well, the great thing that district court said that she would have testified to would be that she was giving these combination of drugs. And those were the same combination of drugs that Dr. Arne gave. And why do you assume that would not have been helpful? Well, the reason that that... The jury did not have to believe your expert's testimony that these were near toxic or whatever the language was. So if you had another doctor, the one who in fact prescribed those amounts, testifying, that would have been, it would have been fact evidence, but also it would have been another expert so-called, whether she was qualified as an expert or not, another so-called expert opinion about whether the doses were in fact toxic and medically appropriate. And that becomes real relevant in the particular standard, the statutory standard that's applicable in this case, correct? Yes, the standard is whether the interest of justice so requires a new trial under Rule 33. No, no, I'm talking about the offense with which Dr. Arne was charged. Right, yes, correct. Basically that he was no longer acting as a physician. Dr. Arne is not charged with gross medical malpractice. Precisely. He's basically charged that he's a drug dealer. He's not engaged in the practice of medicine. He's basically engaged in... Well, there's a standard for doctors that's not your standard drug dealer standard. Outside the course of medical practice, yes, of course. Well, the point is that the lawyers are making a strategic decision. It's not as if... even though they never interviewed Dr. Saxman. So what was the basis of them saying, we don't have to interview the doctor, we already know what the testimony would be? Well, they knew through discovery that the positive aspect, that they were both given the same dosages, they knew that. But they also knew there was a lot that she was doing her practice a lot better than he was. That she was seen every patient and that she saw each returning patient for at least 15 minutes. That she would never have automatically given the same dosages in another... And she was a pain specialist. No, she was not. No, she was not. No, she was... She certainly had more experience in dealing with pain medications than Dr. Arne did, correct? I don't think that's true. She was from Romania and had come to the country about a year or two prior to coming to the clinic. And we had testimony that these... Well, first of all, this was obviously a pill mill clinic. The owner had been stopped for DUI, he had a million dollars in his car. Every patient paid $185 to $250 when they came to visit the clinic. There was no medical, there was no insurance. They were getting Schedule 2s, Schedule 3s, Schedule 4s every time... To get a Schedule 2, there were no refills, so they had to come every month, pay $200 to get their medication. So they knew that if there was a positive aspect to her testifying that she was giving these dosages, they knew that was going to come in. They had taken the videotaped deposition of both experts before trial. But they also knew that she was examining each patient, spending at least 15 minutes with them, and Dr. Arne wasn't. So think about what the cross-examination would be. And they're weighing the positives and the benefits, so he knows there are some positives to having her testify. They knew that Dr. Saxman had spent 15 minutes with each? Oh, yes. How did they know that? Because through the expert of the... How does the expert know? Well, he had reviewed all the medical files and all the documentation. How does he know the medical files are accurate? Well, it's... The medical files, I assume, are hearsay. Well, still, the point is she actually did testify, the evidence you're hearing, so we know what she would have said. And it's clear that she would have testified that she spent 15 minutes with each patient. And so here's a... This is after the fact, okay? Yes, yes. You started out by saying that there's no prejudice because they must prove that the jury would have found the defendant not guilty. Is that really the standard of prejudice? I thought the prejudice is that it had to have an effect on the verdict, which could be a hung jury, could it not? Wouldn't you have prejudice if you were able to convince one jury member not to vote to convict? That may be true. A reasonable probability of a different outcome. Okay, a hung jury is a different outcome, right? Yes. So your statement that they had to show that the jury would have found not guilty is not correct, right? I think some of the case law says that, but I would accept what you're saying, Judge. I mean, all you've got to do is convince one juror, right? Yes, yes. You'd have to show prejudice would be established if you could demonstrate that one reasonable juror likely have voted the other way, that's all. And that's what they're trying to do is they're trying to establish reasonable doubt here. Exactly. Well, I want to ask you a question about your strategic argument. Yes. I can understand why it might be strategic not to call a witness, although whether it could have been reasonably strategic in this case is quite another matter. But I don't see how it's ever a strategic decision that is permissible to be unprepared. Okay, well, Judge, let's accept that— And, you know, Judge Tapar certainly thought that not interviewing Dr. Saxman was a failure to prepare under the circumstances of this case. Let's accept that it was deficient performance. There is no way that this would be prejudice because, first of all, the premise is that Dr. Saxman somehow would be held up, that the jury would see her as appropriate medical practice. Here's a person who's working at an obvious pill mill. They're getting cash. People are coming in every month and getting cash. They're paying cash, like $200 a month. And so the owners had been stopped. They had a million dollars in their car. So there's that problem. Two, if she—the government witnesses testified that they were either pill seekers or addicts. She was the one who had seen the government witness first. So all these government witnesses that admitted that they were going in there and getting pills and they were addicts and they were selling them, she had seen them as well. So it's very unlikely the jury would see her as some kind of the gold standard of medical practice. The government must have seen her as distinguishable in some way because the government didn't indict her or go after her. Yes, well, and that's because— So, I mean, if the government sees her as distinguishable, I don't know why it's irrational to think that a juror might. Well, she was distinguishable because she did things a lot better because she at least—the main focus of Dr. Arne and why he's guilty and the main argument made to the jury is he didn't even bother to see the patients. It was as if people were coming through a drive-thru window, paying their $200 and getting a script, and that's basically what was going on. She saw them, and she said that she made a real effort. She got tired of conducting detective work, she said, and so she quit. And so the jury would very—even if the jury saw her as someone that she was practicing appropriately, the difference between how she practiced and how Dr. Arne practiced was a huge gulf there. It was a stark difference. It's very—so the fact that somehow the jury would reject—and she was given these— our expert said these were near-toxic dosages. And so she was given these exact same dosages, and yet she said that she would never automatically honor what a prior physician did, and that's what he did, and he was just automatically writing these scripts. The jury only deliberated for three hours. And most importantly, Dr. Arne testified. He had the chance to explain himself to the jury, and obviously the jury didn't buy it. So the government admits that there is no prejudice. The defendants have not proved prejudice. If there are no further questions. Thank you. Good morning, and may it please the Court. I am Kent Wicker. I represent Dr. Stephen Arne, who is the defendant, appellee in this case. Judge Tappar got it right. He wrote a careful, well-reasoned decision after reviewing two rounds of briefing and conducting an evidentiary hearing. He found the defense counsel made three crucial errors, at least three, and that those errors undermine the proper functioning of the adversarial process. And to Judge Griffin's question, that is the standard here, and the judge quoted from Strickland on page one of his opinion, that prejudice is shown if there is a serious question about the proper functioning of the adversary process, and that could be a different decision by 12 jurors or by one juror. Do we give any deference to any of the findings made by the district judge? I mean, here he presided over the trial. I mean, he knows the facts and the witnesses so much better than we do, that we're reviewing on a cold record, but it appears that our review is de novo under ineffective assistance of counsel. My question is, are there any of his rulings that are entitled to deference, and if so, what are the rulings and what deference do we apply? Yes, Your Honor, the court said in Munoz and other cases that the proper standard of review is de novo. But to the extent that you are interested in credibility determinations, for instance, Judge Thapar's determination of how effective a witness, Dr. Saxman, would be after conducting the evidentiary hearing. Did he make a ruling to that effect? He made a ruling that she would be a powerful witness, yes, Your Honor, after seeing her speak and evaluating what she said and how she said it. And to the extent that Judge Thapar has a ringside seat and he's able to evaluate credibility of witnesses and how they would have fit in with the evidence of trial, there's nothing in Munoz or the other cases about how you apply your standard of review that would prevent you from acknowledging that he has a better vantage point on some of these issues. There's not any case law that says that factual findings of the district judge are not to be given any deference and that rather we would consider the record in the evidentiary hearing de novo, or is there? Is there a more complete story? I'm not sure there is. What Munoz says is that in cases where the court is applying the law to the facts or deciding mixed questions of fact and law, the traditional standard is de novo, and I have no disagreement with that. But I don't see anything in Munoz or the cases that it cites that prevents you from acknowledging that the district judge has a better vantage point for credibility determinations in an evidentiary hearing that was conducted incident to this question. Would you call the witness was powerful? Would you call that a pure factual finding? I mean, it could be said to be an assessment of the evidence more akin to a mixed question of fact and law, although I'm sure there probably would be some pure fact questions. I think that's a combination, Your Honor. I agree. But under whatever standard the court applies, we're very comfortable with the de novo standard here, and the court does not need to give any deference to Judge Thapar's factual findings to decide that his decision was correct. And if I could, I'd like to first address the argument that the defense counsel's mistakes here were actually strategic choices. The decision to call a witness may be strategic. It's always an evaluation of what unique favorable testimony can the witness provide, weighed against what unique adverse testimony or evidence does this open me up to. But there is no strategy in deciding not to call a witness to find out what she's going to say. The court ruled in Towns v. Smith and in other cases that an attorney can't call a decision strategic in hindsight unless the attorney has investigated his options and made a reasonable choice between them. He can't decline to interview a known and important witness without first undertaking a full and complete investigation into whether that witness can assist the defense. What the government has argued in their briefing this morning as well as reasons you might not call Dr. Saxman, don't explain why you wouldn't interview her in the first place. They knew from talking to Dr. Arne and Dr. Arne insisting over time that I want to call Dr. Saxman as a witness. I want her to be able to explain why she chose this combination of drugs that the government's now calling a toxic combination. I want the jury to hear what she has to say about why she chose that course of treatment, why it was effective in her view and why she continued it on these very patients that I'm accused of treating badly. I gather that based on what the government said that Dr. Saxman is not a pain specialist. I think I assume she was because there is evidence that when Dr. Arne was hired, he was hired until they could get a board-certified pain specialist, and I kind of assumed that he was replacing somebody who had been one. There's not any disagreement about that, is there? It's my understanding, Your Honor, that she is not a board-certified pain specialist, but she has practiced in pain management before and is practicing in pain management now. Dr. Arne didn't have that experience. And Dr. Arne's experience was in the military as a flight surgeon and as a pathologist and did not have experience in pain management, which was all the more reason that he would rely on his predecessor and the drug combinations that she had chosen and that appeared to be working. So it was certainly a reasonable expectation that you would call Dr. Saxman and have her explain why she chose this course. And there's no downside to it. The only thing that the government points to as a reason not to call Dr. Saxman was that she would testify that she gave individual examinations personally to returning patients, whether they were stable or not. And in some instances, Dr. Arne did not. He did not personally examine returning stable patients. They were examined by a nurse instead. That may be a poor choice. That may be a poor way to practice medicine. But it's not necessarily an indication of an agreement, a conspiracy to illegally distribute drugs. And in any event, that piece of evidence came in in the absence of Dr. Saxman and was commented on by a number of witnesses and was argued strongly to the jury in the closing. So calling Dr. Saxman would not have added any unique unfavorable evidence and would have added a lot of important favorable evidence that the jury could have used to vote not guilty. I do want to talk about the point that counsel raised about the lie to Dr. Arne about not calling Dr. Saxman as a witness. As you know from the record, he insisted over and over that defense counsel call her as a witness. And in the course of responding that to those questions and presumably to shut him up about that, his prior defense lawyer told him a false statement of material fact. Judge Tappar called that a lie, and I don't think there's anything else to call it. There is no indication that it was a mistake or an error. It was just a lie. And that was to prevent Dr. Arne from continuing to insist that they call this witness that for whatever reason they didn't want to bother to interview. And it's that kind of conduct that deprives a defendant of his right to make decisions about his case. He has a Sixth Amendment right to contribute to making strategy decisions, deciding what witnesses to call. And if you tell him that a witness is not available or that a witness can't be subpoenaed or that a witness is about to be indicted and that affects his decision on how to make decisions in his case, then you really have deprived him of his Sixth Amendment right to effective assistance of counsel and to a fair trial. And that was what was missing here. The counsel said that Saxman was about to be indicted, and your client wanted to argue a trial that she wasn't indicted and I'm indicted. That argument wasn't made at trial. Could it have been made? Is that a legitimate argument that somebody who did comparable things is not indicted but I'm indicted, or is that inadmissible, or is that impermissible? I think it's completely appropriate to point out inconsistencies in the government's theory. Now, wait a minute. I'm sorry? The government's not on trial. I mean, how would that be an inconsistency in theory? It seems to me that'd be a comment on the government's conduct. Well, the government's, and you can look at the argument on closing, the government argues that Dr. Arne is here in this clinic. This clinic is a pain mill or a pill mill, so he must be involved in the conspiracy. Well, that's inconsistent with other evidence that we know is true, that Dr. Saxman is not here to be on trial, that the government has never indicted her. The government's never suggested that she was a member of the conspiracy. I think that's all perfectly appropriate to put to the jury so they can evaluate the argument that the government has made. I don't know. I mean, I'd be real worried at that from a defense lawyer because it seems to fly in the face of the instructions you give the jury about the consideration of the evidence before you, and you can't speculate about anything else. I mean, I'd be leery. You might convince me. You've made an argument this morning. Well, that was never an argument that was made to the district court. So whether that's admissible or not, whether that's a proper argument, that's an evaluation for the district. That's the argument your client wanted his counsel to make, whether it's admissible or not. Is that it? Well, my client wanted the best defense that he could get. He wanted to show that the government's theory about the circumstances and about the prescription of this particular combination, that it was appropriate and certainly not indicative of criminal conduct. The government says, well, the jury only took three hours to deliberate to find him guilty, and they want to make the inference, well, that shows you the evidence was overwhelming. The other inference is that defense counsel did such a lousy job that it only took him three hours. I mean, you can infer it each way, right? I'm not sure you can take much inference from the time that a jury is out. Yeah, but I think that may help your case, that counsel was so ineffective that the deliberation didn't last very long. I think that's certainly right. And more to that point, the discussion about in their brief they point to a mountain of evidence, that's not really correct when you start looking at what the actual charge was. This was not a charge of being a bad doctor. It was a charge of being in a conspiracy to illegally distribute narcotics. There was no explicit agreement that was testified to, even though the two other members of the so-called conspiracy testified. There's no agreement. So the government is trying to make an implication from what they determine or what they call poor medical practice, that the medical practice is so bad that it just has to be because they're participating in a crime together. So Dr. Saxman and the other patients who were not interviewed or called would have contradicted all of that evidence and all of that argument. If there are no other questions, I'll rely on my brief for the other points. The district court's reasoning that Dr. Saxman's testimony would have been so powerful because it would have set up, because she had not been indicted, that then the jury would have thought that she was appropriate, that inference could not have been openly drawn. The pattern jury instructions say the jury is not to consider whether someone else should be charged, they shouldn't even consider that. So that would have been objectionable if they tried to do that. But the reason why the evidence was so overwhelming was Dr. Arney's own expert said that it was wrong not to examine. When you're given Schedule II, Schedule III, these powerful pain medications every month, it's wrong. Their own expert admitted it was wrong not to see the patients. Dr. Arney himself, their expert admitted in a cross-examination that there was no standard of care. Dr. Arney himself made incriminating statements to the investigators. He said he admitted he stayed too long, should quit earlier. He went back because they agreed to double his salary from $120 to $240 an hour. And he also admitted that he had to figure out some way, because the patient load was so heavy, he had to figure out a way to get these people in and out. The jury would have heard if Dr. Saxman testified, they would have said that she at least was making a good faith effort. The jury could have, the most likely conclusion they would have drawn was, well, that's the reason she didn't get charged, because at least she was making a good faith effort. Although she was also giving these near-toxic dosages to people who came to trial and said that these patients had gone to see her before, and she had given them medications, and they were pill seekers and addicts and people that were selling their drugs to other people, but at least she did the detective work to try to figure that out. And the thing is that Dr. Arney had the chance to explain himself. He explained that he thought it was appropriate in what he was doing, and the jury didn't buy it. They convicted him. And for that reason, this court should direct that the jury verdict be reinstated. If there are no further questions. We appreciate the argument both of you have given, and we'll consider the case carefully. Thank you.